## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 17-32186 |
| UPLIFT RX, LLC[1] | CHAPTER 11 |
| Debtor(s). | Jointly Administered |
| INNOVATIVE RX, LLC, GENEVA PHARMACY, LLC, RICHARDSON PHARMACY, LLC, BENSON PHARMACY, LLC, KENDALL PHARMACY, LLC, CHARLESTON RX, LLC, OHANA RX, LLC f/k/a GENESEE, WAVERLY, LLC, BROOKSIDE RX, LLC, LONE PEAK RX, LLC, SKYLINE HEALTH SERVICES, LLC and ALLIANCE MEDICAL ADMINISTRATION, | ADV. PROC. NO. |
| Plaintiffs, | |
| v. | |
| ANDA, INC., | |
| Defendant. | |

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Uplift Rx, LLC (9306); Belle Pharmacy, LLC (0143); Alliance Medical Holdings, LLC (5945); Geneva Pharmacy, LLC (1929); Ohana Rx, LLC (1722); Benson Pharmacy, Inc. (6606); Kendall Pharmacy, Inc. (0825); Richardson Pharmacy, LLC (9566); Innovative Rx, LLC (9986); Charleston Rx, LLC (5852); On Track Rx, LLC (9021); Uinta Rx, LLC (7157); Goodman Pharmacy, LLC (9373); BrooksideRx, LLC (5927); Osceola Clinic Pharmacy, LLC (4886); Oak Creek Rx, LLC (9722); Waverly Pharmacy, LLC (7342); Newton Rx, LLC (9510); Lone Peak Rx, LLC (5973); Improve Rx, LLC (9120); New Jersey Rx, LLC (0035); Berkshire Pharmacy, LLC (9197); Health Saver Rx, LLC (7810); Best Rx, LLC (0346); Delaney Pharmacy, LLC (7497); New Life Pharmacy, LLC (8292); Skyline Health Services, LLC (6876); Stonybrook Pharmacy, LLC (7700); Woodward Drugs, LLC (2385); Bridgestone Pharmacy, LLC (5294); Brookhill Pharmacy, LLC (5296); Burbank Pharmacy, LLC (5227); Canyons Pharmacy, LLC (1744); Cheshire Pharmacy, LLC (6370); Conoly Pharmacy, LLC (0367); Cottonwood Pharmacy, LLC (5131); Galena Pharmacy, LLC (0672); Garnett Pharmacy, LLC (6505); Hawthorne Pharmacy, LLC (5345); Hazelwood Pharmacy, LLC (1088); Medina Pharmacy, LLC (8987); Raven Pharmacy, LLC (5671); Glendale Square Rx, Inc. (1022); Lockeford Rx, Inc. (1853); Pinnacle Pharmacy Solutions, LLC (9760); Riverfront Rx, LLC (7152); Riverbend Prescription Services, LLC (1862); Raven Pharmacy Holdings, LLC (2464); Bridgestone Pharmacy Holdings, LLC (2840); Crestwell Pharmacy Holdings, LLC (1503); Galena Pharmacy Holdings, LLC (8609); Geneva Rx Holdings, LLC (8247); Hawthorne Rx Holdings, LLC (9531); Woodward Rx Holdings, LLC (2173); Philadelphia Pharmacy Holdings, LLC (8526); Health Rx Holdings, LLC (0909); Canyon Medical, LLC (4915); Alliance Medical Administration, Inc. (2899); Ollin Pharmaceutical, LLC (9815); Alta Distributors, LLC (7407); Eat Great Café, LLC (2314); Alliance Health Networks, LLC (1815) . The Debtors' mailing address is Uplift Rx, LLC, 15462 FM 529, Houston, TX 7709.

### COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502

INNOVATIVE RX, LLC ("INNOVATIVE"), GENEVA PHARMACY, LLC ("GENEVA"), RICHARDSON PHARMACY, LLC f/k/a EL DORADO ("RICHARDSON"), BENSON PHARMACY, LLC ("BENSON"), KENDALL PHARMACY, LLC ("KENDALL"), CHARLESTON RX, LLC ("CHARLESTON"), OHANA RX, LLC f/k/a GENESEE ("OHANA"), WAVERLY, LLC ("WAVERLY"), BROOKSIDE RX, LLC ("BROOKSIDE") , LONE PEAK RX, LLC ("LONE PEAK"), SKYLINE HEALTH SERVICES, LLC ("SKYLINE") and ALLIANCE MEDICAL ADMINISTRATION, INC. ("AMA"), the above-captioned Chapter 11 debtors (collectively, the "Plaintiff Debtors"), file this complaint (the "Complaint") to (i) avoid and recover preferential and/or fraudulent transfers made by the Plaintiff Debtors to or for the benefit of ANDA, INC. ("Defendant") pursuant to sections 547, 548 and 550 of title 11 of the United States Code ("Bankruptcy Code"), and (ii) disallow Defendant's claims in the Plaintiff Debtors' bankruptcy cases pursuant to 11 U.S.C. §502, and in support thereof, respectfully represent as follows:

### NATURE OF THE PROCEEDING

1.      The Plaintiff Debtors seek entry of a judgment against Defendant: (i) avoiding (a) the Preferential Transfers (as defined herein) pursuant to Section 547 of the Bankruptcy Code, and (b) the Wrong Payor Transfers (as defined herein) pursuant to Section 548(a)(1)(B) of the Bankruptcy Code; (ii) directing Defendant to pay the Plaintiff Debtors respective bankruptcy estates an amount to be determined at trial that is not less than TWO HUNDRED FORTY-SIX THOUSAND EIGHT HUNDRED SIXTY DOLLARS AND Sixteen Cents ($246,860.16), plus interest and costs, pursuant to Section 550(a) of the Bankruptcy Code; and (iii) pending such

2

payment, disallowing any claim of Defendant against the applicable Plaintiff Debtor pursuant to Section 502(d) of the Bankruptcy Code.

## JURISDICTION AND VENUE

2.      This adversary proceeding relates to the Chapter 11 cases of Uplift Rx, LLC and its debtor affiliates, which cases are pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"), and are being jointly administered under Case No. 17-32186 (collectively, the "Bankruptcy Cases").

3.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334(b).

4.      This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (B), (F), (H) and (O).

5.      Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

6.      The Plaintiff Debtors consent to entry of final orders and judgments by the Court in this adversary proceeding, regardless of whether it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

7.      On April 7, 2017 ("INNOVATIVE Petition Date"), INNOVATIVE filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Court, which case is pending and being jointly administered with the Bankruptcy Cases.

8.      At all times relevant hereto, INNOVATIVE operated a pharmacy in Draper, Utah.

3

9.      On April 7, 2017 ("GENEVA Petition Date"), GENEVA filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Court, which case is pending and being jointly administered with the Bankruptcy Cases.

10.     At all times relevant hereto, GENEVA operated a pharmacy located in Elkhorn, Nebraska.

11.     On April 7, 2017 ("RICHARDSON Petition Date"), RICHARDSON filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Court, which case is pending and being jointly administered with the Bankruptcy Cases.

12.     At all times relevant hereto, RICHARDSON operated a pharmacy located in Richardson, Texas.

13.     On April 7, 2017 ("BENSON Petition Date"), BENSON filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Court, which case is pending and being jointly administered with the Bankruptcy Cases.

14.     At all times relevant hereto, BENSON operated a pharmacy in Irvine, California.

15.     On April 7, 2017 ("KENDALL Petition Date"), KENDALL filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Court, which case is pending and being jointly administered with the Bankruptcy Cases.

16.     At all times relevant hereto, KENDALL operated a pharmacy in San Leandro, California.

17.     On April 7, 2017 ("CHARLESTON Petition Date"), CHARLESTON filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Court, which case is pending and being jointly administered with the Bankruptcy Cases.

4819-0330-4594.1

18.     At all times relevant hereto, CHARLESTON operated a pharmacy in Greenville, South Carolina.

19.     On April 7, 2017 ("OHANA Petition Date"), OHANA filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Court, which case is pending and being jointly administered with the Bankruptcy Cases.

20.     At all times relevant hereto, OHANA operated a pharmacy in Greece, New York.

21.     On April 7, 2017 ("WAVERLY Petition Date"), WAVERLY filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Court, which case is pending and being jointly administered with the Bankruptcy Cases.

22.     At all times relevant hereto, WAVERLY operated a pharmacy in Waverly, Virginia.

23.     On April 7, 2017 ("BROOKSIDE Petition Date"), BROOKSIDE filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Court, which case is pending and being jointly administered with the Bankruptcy Cases.

24.     At all times relevant hereto, BROOKSIDE operated a pharmacy in Omaha, Nebraska.

25.      On April 7, 2017 ("LONE PEAK Petition Date"), LONE PEAK filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Court, which case is pending and being jointly administered with the Bankruptcy Cases.

26.     At all times relevant hereto, LONE PEAK operated a pharmacy in Draper, Utah.

27.     On April 8, 2017 ("SKYLINE Petition Date"), SKYLINE filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Court, which case is pending and being jointly administered with the Bankruptcy Cases.

4819-0330-4594.1

28.     On April 9, 2017 ("AMA Petition Date"), AMA filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Court, which case is pending and being jointly administered with the Bankruptcy Cases.

29.     On April 18, 2017, the Court entered an order requiring the appointment of a Chapter 11 Trustee in the Bankruptcy Cases (Doc. No. 37).  Thereafter, the Office of the United States Trustee appointed Ronald L. Glass to serve as Chapter 11 Trustee, and the Court entered an order approving Mr. Glass's appointment (Doc. No. 307).

30.     This adversary proceeding is part of the Plaintiff Debtors continuing obligation to recover assets for the benefit of the Plaintiff Debtors' respective bankruptcy estates.

## FACTUAL BACKGROUND

31.     Prior to the filing of the Bankruptcy Cases, the above-captioned debtors (the "Debtors") owned and operated a network of pharmacies across the United States that specialized in providing prescriptions to patients with chronic health conditions, including diabetes (the "Alliance Health Network").  Within the Alliance Healthcare Network, certain entities, including SKYLINE and AMA, provided marketing, accounting, administration, or distribution services (the "Corporate Debtors").[2]  The remainder of the Debtors either owned and operated or managed pharmacies within the Alliance Healthcare Network (the "Pharmacy Debtors").[3]

32.     Within the Alliance Healthcare Network, customer leads were generated by the Corporate Debtors and provided to the appropriate Pharmacy Debtors.  As the Pharmacy Debtors collected revenue, cash was sent up to the Corporate Debtors and pooled together.  From there the

---

[2] "Corporate Debtors" means, collectively, the following Debtors:  Alliance Medical Holdings, LLC; Alliance Medical Administration, Inc.; Alliance Health Networks, LLC; Pinnacle Pharmacy Solutions, LLC; Riverfront Rx, LLC; Eat Great Café, LLC; New Life Pharmacy, LLC; Alta Distributors, LLC; Ollin Pharmaceutical, LLC; and Skyline Health Services, LLC.

[3] "Pharmacy Debtors" means, collectively, all of the Debtors except for the Corporate Debtors.

4819-0330-4594.1

Corporate Debtors would directly pay certain expenses of the Pharmacy Debtors and/or would send money back down to the appropriate Pharmacy Debtors to pay other expenses.

33.     The Debtors generally did not account for obligations amongst themselves or keep any type of ledger showing "due to and due from" among any of the Debtors.  Because of the Debtors' business model, new pharmacies were constantly being formed and/or acquired to keep up with the customer leads generated by the Corporate Debtors.

34.     At all times relevant hereto, Defendant did not provide goods or services to SKYLINE.

35.     At all times relevant hereto, Defendant did not provide goods or services to AMA.

36.     The Plaintiff Debtors were each owned, directly or indirectly, by Alliance Medical Holdings, LLC.

37.     The Trustee and his professionals have conducted an investigation of the Debtors' books and records and related financial documents for the purpose of determining what claims or causes of action are available to the Plaintiff Debtors.

38.     Based on a review of the Debtors' books and records, together with the facts and circumstances surrounding the filing of the Bankruptcy Cases, the Plaintiff Debtors allege, on information and belief, that by July 1, 2016, and at all times thereafter, the Plaintiff Debtors were each insolvent.

39.     The Plaintiff Debtors' books and records reflect that during the ninety (90) day period preceding the INNOVATIVE Petition Date ("INNOVATIVE Preference Period"), GENEVA Petition Date ("GENEVA Preference Period"), RICHARDSON Petition Date ("RICHARDSON Preference Period"), WAVERLY Petition Date ("WAVERLY Preference Period"), BENSON Petition Date ("BENSON Preference Period"), KENDALL ("KENDALL

7

Preference Period"), CHARLESTON Petition Date ("CHARLESTON Preference Period"), OHANA Petition Date ("OHANA Preference Period"), BROOKSIDE Petition Date ("BROOKSIDE Preference Period"), LONE PEAK Petition Date ("LONE PEAK Preference Period") SKYLINE Petition Date ("SKYLINE Preference Period") and AMA Petition Date ("AMA Preference Period"), one or more of the Plaintiff Debtors transferred money to Defendant, which transfers are identified on **Exhibit A** attached hereto and incorporated herein by reference (the "INNOVATIVE Preferential Transfers")("GENEVA Preferential Transfers")("RICHARDSON Preferential Transfers")("BENSON Preferential Transfers")("KENDALL Preferential Transfers")("CHARLESTON Preferential Transfers")("OHANA Preferential Transfers")("BROOKSIDE Preferential Transfers")("LONE PEAK Preferential Transfers") ("SKYLINE Preferential Transfers")("AMA Preferential Transfers"), respectively, and collectively, the "Preferential Transfers").

40.     At all times relevant hereto, Defendant provided goods or services to INNOVATIVE, GENEVA, RICHARDSON, WAVERLY, BENSON, KENDALL, CHARLESTON, OHANA, BROOKSIDE and LONE PEAK.

41.     During the SKYLINE Preference Period and AMA Preference Period, SKYLINE and AMA were obligated to make payments to Pharmacy Debtors' creditors, including, but not limited to INNOVATIVE, GENEVA, RICHARDSON, WAVERLY, BENSON, KENDALL, CHARLESTON, OHANA, BROOKSIDE and LONE PEAK, and Twin Lakes, a non-debtor pharmacy.

42.     The Debtors' books and records reflect that during the time period between July 1, 2016 through the commencement of the Plaintiff Debtors' respective bankruptcy cases (the "Insolvency Period"), AMA and SKYLINE transferred money to Defendant, which transfers are

identified on **Exhibit B** attached hereto and incorporated herein by reference (the "SKYLINE Wrong Payor Transfers" and the "AMA Wrong Payor Transfers", respectively, and collectively, the "Wrong Payor Transfers").

## CLAIMS FOR RELIEF

### COUNT I
**(Avoidance of Preferential Transfers from INNOVATIVE to Defendant Pursuant to 11 U.S.C. §547(b))**

43.     The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

44.     On or about March 9, 2017, during the INNOVATIVE Preference Period, INNOVATIVE made, or caused to be made, transfers of an interest of INNOVATIVE in property to, or for the benefit of, Defendant which are more specifically set forth on Exhibit A.

45.     The INNOVATIVE Preferential Transfer was in an amount equal to TWELVE THOUSAND TWENTY-FOUR DOLLARS AND Forty-two Cents ($12,024.42).

46.     Plaintiff Debtors allege that INNOVATIVE, through an integrated transaction, indirectly made the INNOVATIVE Preferential Transfer to the Defendant through AMA

47.     Defendant supplied goods and services to INNOVATIVE.

48.     Defendant was a creditor of INNOVATIVE at the time of the INNOVATIVE Preferential Transfer.

49.     INNOVATIVE made, or caused to be made, the INNOVATIVE Preferential Transfer for, or on account of, antecedent debt owed by INNOVATIVE to Defendant.

50.     At the time of the INNOVATIVE Preferential Transfer, INNOVATIVE was insolvent.

9

51.     INNOVATIVE is entitled to the presumption of insolvency for the INNOVATIVE Preferential Transfer pursuant to Section 547(f) of the Bankruptcy Code.

52.     The INNOVATIVE Preferential Transfer enabled Defendant to receive more than Defendant would receive if: (a) INNOVATIVE's bankruptcy case was administered under chapter 7 of the Bankruptcy Code; (b) the INNOVATIVE Preferential Transfer had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

53.     At no time relevant hereto did Defendant maintain a lien on INNOVATIVE's assets or otherwise hold a secured interest.

54.     The INNOVATIVE Preferential Transfer diminished the value of INNOVATIVE's bankruptcy estate.

55.     Defendant was the initial transferee of the INNOVATIVE Preferential Transfer, or the entity for whose benefit the INNOVATIVE Preferential Transfer were made.

56.     The INNOVATIVE Preferential Transfer is avoidable and INNOVATIVE is entitled to an order and judgment against the Defendant avoiding the INNOVATIVE Preferential Transfer pursuant to 11 U.S.C. §547(b).

**WHEREFORE,** INNOVATIVE respectfully requests this Court enter a judgment against the Defendant: (i) finding that the INNOVATIVE Preferential Transfer is preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the INNOVATIVE Preferential Transfer; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

## COUNT II
**(Avoidance of Preferential Transfers from GENEVA to Defendant Pursuant to 11 U.S.C. §547(b))**

4819-0330-4594.1

57.     The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

58.     On or about March 9, 2017, during the GENEVA Preference Period, GENEVA made, or caused to be made, transfers of an interest of GENEVA in property to, or for the benefit of, Defendant which are more specifically set forth on Exhibit B.

59.     The GENEVA Preferential Transfer was in an amount equal to THIRTEEN THOUSAND TWENTY-FIVE DOLLARS AND Eighty Cents ($13,025.80).

60.     Plaintiff Debtors allege that GENEVA, through an integrated transaction, indirectly made the GENEVA Preferential Transfer to the Defendant through AMA.

61.     Defendant supplied goods and services to GENEVA.

62.     Defendant was a creditor of GENEVA at the time of the GENEVA Preferential Transfer.

63.     GENEVA made, or caused to be made, the GENEVA Preferential Transfer for, or on account of, antecedent debt owed by GENEVA to Defendant.

64.     At the time of the GENEVA Preferential Transfer, GENEVA was insolvent.

65.     GENEVA is entitled to the presumption of insolvency for the GENEVA Preferential Transfer pursuant to Section 547(f) of the Bankruptcy Code.

66.     The GENEVA Preferential Transfer enabled Defendant to receive more than Defendant would receive if: (a) GENEVA's bankruptcy case was administered under chapter 7 of the Bankruptcy Code; (b) the GENEVA Preferential Transfer had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

4819-0330-4594.1

67.     At no time relevant hereto did Defendant maintain a lien on GENEVA's assets or otherwise hold a secured interest.

68.     The GENEVA Preferential Transfer diminished the value of GENEVA's bankruptcy estate.

69.     Defendant was the initial transferee of the GENEVA Preferential Transfer, or the entity for whose benefit the GENEVA Preferential Transfer were made.

70.     The GENEVA Preferential Transfer is avoidable and GENEVA is entitled to an order and judgment against the Defendant avoiding the GENEVA Preferential Transfer pursuant to 11 U.S.C. §547(b).

**WHEREFORE,** GENEVA respectfully requests this Court enter a judgment against the Defendant: (i) finding that the GENEVA Preferential Transfer is preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the GENEVA Preferential Transfer; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

## COUNT III
### (Avoidance of Preferential Transfers from RICHARDSON to Defendant Pursuant to 11 U.S.C. §547(b))

71.     The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

72.     On or about February 13, 2017, RICHARDSON, during the RICHARDSON Preference period, RICHARDSON transferred an interest of RICHARDSON in property in the amount of NINETEEN THOUSAND EIGHT HUNDRED NINETY-NINE DOLLARS AND Ninety-Eight Cents ($19,899.98), to or for the benefit of the Defendant, which is more specifically set forth on Exhibit A.

73. On or about March 9, 2017, during the RICHARDSON Preference Period, RICHARDSON made, or caused to be made, transfers of an interest of RICHARDSON in property to, or for the benefit of, Defendant, indirectly, through an integrated transaction, through AMA in the amount of FIVE HUNDRED EIGHTY-FIVE DOLLARS AND Forty-Six Cents ($585.46) which is more specifically set forth on Exhibit A.

74. On or about March 14, 2017, during the RICHARDSON Preference Period, RICHARDSON made, or caused to be made, transfers of an interest of RICHARDSON in property to, or for the benefit of, Defendant, indirectly, through an integrated transaction, through SKYLINE in the amount SEVENTEEN THOUSAND NINE HUNDRED SIXTY-FOUR DOLLARS AND Eighty-nine Cents ($17,964.89).

75. Collectively, the RICHARDSON Preferential Transfers to Defendant from RICHARDSON total THIRTY-EIGHT THOUSAND FOUR HUNDRED FIFTY DOLLARS and Thirty-three Cents.

76. Defendant supplied goods and services to RICHARDSON.

77. Defendant was a creditor of RICHARDSON at the time of the RICHARDSON Preferential Transfers.

78. RICHARDSON made, or caused to be made, the RICHARDSON Preferential Transfers for, or on account of, antecedent debt owed by RICHARDSON to Defendant.

79. At the time of the RICHARDSON Preferential Transfers, RICHARDSON was insolvent.

80. RICHARDSON is entitled to the presumption of insolvency for the RICHARDSON Preferential Transfers pursuant to Section 547(f) of the Bankruptcy Code.

4819-0330-4594.1

81.     The RICHARDSON Preferential Transfers enabled Defendant to receive more than Defendant would receive if: (a) RICHARDSON's bankruptcy case was administered under chapter 7 of the Bankruptcy Code; (b) the RICHARDSON Preferential Transfers had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

82.     At no time relevant hereto did Defendant maintain a lien on RICHARDSON's assets or otherwise hold a secured interest.

83.     The RICHARDSON Preferential Transfers diminished the value of RICHARDSON's bankruptcy estate.

84.     Defendant was the initial transferee of the RICHARDSON Preferential Transfers, or the entity for whose benefit the RICHARDSON Preferential Transfers were made.

85.     The RICHARDSON Preferential Transfers is avoidable and RICHARDSON is entitled to an order and judgment against the Defendant avoiding the RICHARDSON Preferential Transfers pursuant to 11 U.S.C. §547(b).

**WHEREFORE,** RICHARDSON respectfully requests this Court enter a judgment against the Defendant: (i) finding that the RICHARDSON Preferential Transfers are preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the RICHARDSON Preferential Transfers; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

## <u>COUNT IV</u>
### (Avoidance of Preferential Transfers from BENSON to Defendant Pursuant to 11 U.S.C. §547(b))

86.     The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

4819-0330-4594.1

87.     On or about February 2, 2017, during the BENSON Preference Period, BENSON made, or caused to be made, transfers of an interest of BENSON in property to, or for the benefit of, Defendant which are more specifically set forth on Exhibit A.

88.     The BENSON Preferential Transfer was in an amount equal to THIRTEEN THOUSAND ONE HUNDRED FIFTY-FIVE DOLLARS AND Thirty-five Cents ($13,155.35).

89.     Defendant supplied goods and services to BENSON.

90.     Defendant was a creditor of BENSON at the time of the BENSON Preferential Transfer.

91.     BENSON made, or caused to be made, the BENSON Preferential Transfer for, or on account of, antecedent debt owed by BENSON to Defendant.

92.     At the time of the BENSON Preferential Transfer, BENSON was insolvent.

93.     BENSON is entitled to the presumption of insolvency for the BENSON Preferential Transfer pursuant to Section 547(f) of the Bankruptcy Code.

94.     The BENSON Preferential Transfer enabled Defendant to receive more than Defendant would receive if: (a) BENSON's bankruptcy case was administered under chapter 7 of the Bankruptcy Code; (b) the BENSON Preferential Transfer had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

95.     At no time relevant hereto did Defendant maintain a lien on BENSON's assets or otherwise hold a secured interest.

96.     The BENSON Preferential Transfer diminished the value of GENEVA's bankruptcy estate.

97.     Defendant was the initial transferee of the BENSON Preferential Transfer, or the entity for whose benefit the BENSON Preferential Transfer were made.

98.     The BENSON Preferential Transfer is avoidable and BENSON is entitled to an order and judgment against the Defendant avoiding the BENSON Preferential Transfer pursuant to 11 U.S.C. §547(b).

**WHEREFORE,** BENSON respectfully requests this Court enter a judgment against the Defendant: (i) finding that the BENSON Preferential Transfer is preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the BENSON Preferential Transfer; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

## COUNT V
**(Avoidance of Preferential Transfers from KENDALL to Defendant Pursuant to 11 U.S.C. §547(b))**

99.     The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

100.    On or about February 13, 2017, during the KENDALL Preference Period, KENDALL made, or caused to be made, transfers of an interest of KENDALL in property to, or for the benefit of, Defendant which are more specifically set forth on Exhibit A.

101.    The KENDALL Preferential Transfer was in an amount equal to SIXTEEN THOUSAND ONE HUNDRED DOLLARS ($16,100.00).

102.    Defendant supplied goods and services to KENDALL.

103.    Defendant was a creditor of KENDALL at the time of the KENDALL Preferential Transfer.

4819-0330-4594.1

104.    KENDALL made, or caused to be made, the KENDALL Preferential Transfer for, or on account of, antecedent debt owed by KENDALL to Defendant.

105.    At the time of the KENDALL Preferential Transfer, KENDALL was insolvent.

106.    KENDALL is entitled to the presumption of insolvency for the KENDALL Preferential Transfer pursuant to Section 547(f) of the Bankruptcy Code.

107.    The KENDALL Preferential Transfer enabled Defendant to receive more than Defendant would receive if: (a) KENDALL's bankruptcy case was administered under chapter 7 of the Bankruptcy Code; (b) the KENDALL Preferential Transfer had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

108.    At no time relevant hereto did Defendant maintain a lien on KENDALL's assets or otherwise hold a secured interest.

109.    The KENDALL Preferential Transfer diminished the value of KENDALL's bankruptcy estate.

110.    Defendant was the initial transferee of the KENDALL Preferential Transfer, or the entity for whose benefit the KENDALL Preferential Transfer were made.

111.    The KENDALL Preferential Transfer is avoidable and KENDALL is entitled to an order and judgment against the Defendant avoiding the KENDALL Preferential Transfer pursuant to 11 U.S.C. §547(b).

**WHEREFORE,** KENDALL respectfully requests this Court enter a judgment against the Defendant: (i) finding that the KENDALL Preferential Transfer is preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the KENDALL Preferential Transfer; and

(iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

<u>**COUNT VI**</u>
**(Avoidance of Preferential Transfers from CHARLESTON to Defendant Pursuant to 11 U.S.C. §547(b))**

112.     The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

113.     On or about February 14, 2017, during the CHARLESTON Preference Period, CHARLESTON made, or caused to be made, transfers of an interest of CHARLESTON in property to, or for the benefit of, Defendant which are more specifically set forth on Exhibit A.

114.     The CHARLESTON Preferential Transfer was in an amount equal to EIGHT THOUSAND NINE HUNDRED NINETY-FIVE DOLLARS and Thirty-three Cents ($8,995.33).

115.     Defendant supplied goods and services to CHARLESTON.

116.     Defendant was a creditor of CHARLESTON at the time of the CHARLESTON Preferential Transfer.

117.     CHARLESTON made, or caused to be made, the CHARLESTON Preferential Transfer for, or on account of, antecedent debt owed by CHARLESTON to Defendant.

118.     At the time of the CHARLESTON Preferential Transfer, CHARLESTON was insolvent.

119.     CHARLESTON is entitled to the presumption of insolvency for the CHARLESTON Preferential Transfer pursuant to Section 547(f) of the Bankruptcy Code.

120.     The CHARLESTON Preferential Transfer enabled Defendant to receive more than Defendant would receive if: (a) CHARLESTON's bankruptcy case was administered under chapter 7 of the Bankruptcy Code; (b) the CHARLESTON Preferential Transfer had not been

4819-0330-4594.1

made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

121.    At no time relevant hereto did Defendant maintain a lien on CHARLESTON's assets or otherwise hold a secured interest.

122.    The CHARLESTON Preferential Transfer diminished the value of CHARLESTON's bankruptcy estate.

123.    Defendant was the initial transferee of the CHARLESTON Preferential Transfer, or the entity for whose benefit the CHARLESTON Preferential Transfer were made.

124.    The CHARLESTON Preferential Transfer is avoidable and CHARLESTON is entitled to an order and judgment against the Defendant avoiding the CHARLESTON Preferential Transfer pursuant to 11 U.S.C. §547(b).

**WHEREFORE,** CHARLESTON respectfully requests this Court enter a judgment against the Defendant: (i) finding that the CHARLESTON Preferential Transfer is preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the CHARLESTON Preferential Transfer; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

### COUNT VII
**(Avoidance of Preferential Transfers from OHANA to Defendant Pursuant to 11 U.S.C. §547(b))**

125.    The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

126.    On or about March 14, 2017, during the OHANA Preference Period, OHANA made, or caused to be made, through an integrated transaction, made an indirect transfer of an interest of OHANA in the amount of TWO HUNDRED EIGHTY-SIX DOLLARS AND Seventy-

4819-0330-4594.1

seven Cents ($286.77) through AMA to, or for the benefit of, Defendant which is more specifically set forth on Exhibit A.

127.    On or about March 29, 2017, during the OHANA Preference Period, OHANA made a transfer of an interest of OHANA in the amount of ONE HUNDRED EIGHTY-FOUR DOLLARS and Four Cents ($184.04).

128.    The OHANA Preferential Transfers totaled THREE HUNDRED NINETY DOLLARS and Eighty-one Cents ($390.81).

129.    Defendant supplied goods and services to OHANA.

130.    Defendant was a creditor of OHANA at the time of the OHANA Preferential Transfers.

131.    OHANA made, or caused to be made, the OHANA Preferential Transfers for, or on account of, antecedent debt owed by OHANA to Defendant.

132.    At the time of the OHANA Preferential Transfers, OHANA was insolvent.

133.    OHANA is entitled to the presumption of insolvency for the OHANA Preferential Transfer pursuant to Section 547(f) of the Bankruptcy Code.

134.    The OHANA Preferential Transfers enabled Defendant to receive more than Defendant would receive if: (a) OHANA's bankruptcy case was administered under chapter 7 of the Bankruptcy Code; (b) the OHANA Preferential Transfers had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

135.    At no time relevant hereto did Defendant maintain a lien on OHANA's assets or otherwise hold a secured interest.

136.    The OHANA Preferential Transfers diminished the value of OHANA's bankruptcy estate.

137.    Defendant was the initial transferee of the OHANA Preferential Transfers, or the entity for whose benefit the OHANA Preferential Transfers were made.

138.    The OHANA Preferential Transfers are avoidable and OHANA is entitled to an order and judgment against the Defendant avoiding the OHANA Preferential Transfers pursuant to 11 U.S.C. §547(b).

**WHEREFORE,** OHANA respectfully requests this Court enter a judgment against the Defendant: (i) finding that the OHANA Preferential Transfers are preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the OHANA Preferential Transfers; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

## <u>COUNT VIII</u>
**(Avoidance of Preferential Transfers from WAVERLY to Defendant Pursuant to 11 U.S.C. §547(b))**

139.    The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

140.    On or about March 2, 2017 and March 9, 2017, respectively, during the WAVERLY Preference Period, WAVERLY made, or caused to be made, transfers of an interest of GENEVA in property to, or for the benefit of, Defendant which are more specifically set forth on Exhibit A.

141.    The WAVERLY Preferential Transfers totaled THIRTY-ONE THOUSAND SEVEN HUNDRED NINETY DOLLARS and Sixty-One Cents ($31,790.61).

142.     Plaintiff Debtors allege that WAVERLY, through an integrated transaction, indirectly made the WAVERLY Preferential Transfers to the Defendant through AMA.

143.     Defendant supplied goods and services to WAVERLY.

144.     Defendant was a creditor of WAVERLY at the time of the WAVERLY Preferential Transfers.

145.     WAVERLY made, or caused to be made, the WAVERLY Preferential Transfers for, or on account of, antecedent debt owed by WAVERLY to Defendant.

146.     At the time of the WAVERLY Preferential Transfers, WAVERLY was insolvent.

147.     WAVERLY is entitled to the presumption of insolvency for the WAVERLY Preferential Transfers pursuant to Section 547(f) of the Bankruptcy Code.

148.     The WAVERLY Preferential Transfers enabled Defendant to receive more than Defendant would receive if: (a) WAVERLY's bankruptcy case was administered under chapter 7 of the Bankruptcy Code; (b) the WAVERLY Preferential Transfers had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

149.     At no time relevant hereto did Defendant maintain a lien on WAVERLY's assets or otherwise hold a secured interest.

150.     The WAVERLY Preferential Transfers diminished the value of WAVERLY's bankruptcy estate.

151.     Defendant was the initial transferee of the WAVERLY Preferential Transfers, or the entity for whose benefit the WAVERLY Preferential Transfers were made.

152.     The WAVERLY Preferential Transfers are avoidable and WAVERLY is entitled to an order and judgment against the Defendant avoiding the WAVERLY Preferential Transfers pursuant to 11 U.S.C. §547(b).

**WHEREFORE,** WAVERLY respectfully requests this Court enter a judgment against the Defendant: (i) finding that the WAVERLY Preferential Transfers are preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the WAVERLY Preferential Transfers; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

## COUNT IX
### (Avoidance of Preferential Transfers from BROOKSIDE to Defendant Pursuant to 11 U.S.C. §547(b))

153.     The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

154.     On or about March 9, 2017, during the BROOKSIDE Preference Period, BROOKSIDE made, or caused to be made, transfers of an interest of BROOKSIDE in property to, or for the benefit of, Defendant which are more specifically set forth on Exhibit A.

155.     The BROOKSIDE Preferential Transfer was in an amount equal to TWELVE THOUSAND FOUR HUNDRED FORTY-TWO DOLLARS and Forty-One Cents ($12,442.41).

156.      Plaintiff Debtors allege that BROOKSIDE, through an integrated transaction, indirectly made the BROOKSIDE Preferential Transfer to the Defendant through AMA.

157.     Defendant supplied goods and services to BROOKSIDE.

158.     Defendant was a creditor of BROOKSIDE at the time of the BROOKSIDE Preferential Transfer.

4819-0330-4594.1

159.    BROOKSIDE made, or caused to be made, the BROOKSIDE Preferential Transfer for, or on account of, antecedent debt owed by BROOKSIDE to Defendant.

160.    At the time of the BROOKSIDE Preferential Transfer, BROOKSIDE was insolvent.

161.    BROOKSIDE is entitled to the presumption of insolvency for the BROOKSIDE Preferential Transfer pursuant to Section 547(f) of the Bankruptcy Code.

162.    The BROOKSIDE Preferential Transfer enabled Defendant to receive more than Defendant would receive if: (a) BROOKSIDE's bankruptcy case was administered under chapter 7 of the Bankruptcy Code; (b) the BROOKSIDE Preferential Transfer had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

163.    At no time relevant hereto did Defendant maintain a lien on BROOKSIDE's assets or otherwise hold a secured interest.

164.    The BROOKSIDE Preferential Transfer diminished the value of BROOKSIDE's bankruptcy estate.

165.    Defendant was the initial transferee of the BROOKSIDE Preferential Transfer, or the entity for whose benefit the BROOKSIDE Preferential Transfer were made.

166.    The BROOKSIDE Preferential Transfer is avoidable and BROOKSIDE is entitled to an order and judgment against the Defendant avoiding the BROOKSIDE Preferential Transfer pursuant to 11 U.S.C. §547(b).

**WHEREFORE,** BROOKSIDE respectfully requests this Court enter a judgment against the Defendant: (i) finding that the BROOKSIDE Preferential Transfer is preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the BROOKSIDE Preferential Transfer;

and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

<u>**COUNT X**</u>
**(Avoidance of Preferential Transfers from LONE PEAK to Defendant Pursuant to 11 U.S.C. §547(b))**

167.     The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

168.     On or about March 28, 2017, during the LONE PEAK Preference Period, LONE PEAK made, or caused to be made, transfers of an interest of LONE PEAK in property to, or for the benefit of, Defendant which are more specifically set forth on Exhibit A.

169.     The LONE PEAK Preferential Transfer was in an amount equal to ONE HUNDRED TWENTY-THREE DOLLARS and Twelve Cents ($123.12).

170.      Plaintiff Debtors allege that LONE PEAK, through an integrated transaction, indirectly made the LONE PEAK Preferential Transfer to the Defendant through AMA.

171.     Defendant supplied goods and services to LONE PEAK.

172.     Defendant was a creditor of LONE PEAK at the time of the LONE PEAK Preferential Transfer.

173.     LONE PEAK made, or caused to be made, the LONE PEAK Preferential Transfer for, or on account of, antecedent debt owed by LONE PEAK to Defendant.

174.     At the time of the LONE PEAK Preferential Transfer, LONE PEAK was insolvent.

175.     LONE PEAK is entitled to the presumption of insolvency for the LONE PEAK Preferential Transfer pursuant to Section 547(f) of the Bankruptcy Code.

176.     The LONE PEAK Preferential Transfer enabled Defendant to receive more than Defendant would receive if: (a) LONE PEAK's bankruptcy case was administered under chapter

4819-0330-4594.1

7 of the Bankruptcy Code; (b) the LONE PEAK Preferential Transfer had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

177.    At no time relevant hereto did Defendant maintain a lien on LONE PEAK's assets or otherwise hold a secured interest.

178.    The LONE PEAK Preferential Transfer diminished the value of LONE PEAK's bankruptcy estate.

179.    Defendant was the initial transferee of the LONE PEAK Preferential Transfer, or the entity for whose benefit the LONE PEAK Preferential Transfer was made.

180.    The LONE PEAK Preferential Transfer is avoidable and LONE PEAK is entitled to an order and judgment against the Defendant avoiding the LONE PEAK Preferential Transfer pursuant to 11 U.S.C. §547(b).

**WHEREFORE,** LONE PEAK respectfully requests this Court enter a judgment against the Defendant: (i) finding that the LONE PEAK Preferential Transfer is preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the LONE PEAK Preferential Transfer; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

## <u>COUNT XI</u>
**(Avoidance of Preferential Transfers from AMA to Defendant Pursuant to 11 U.S.C. §547(b))**

181.    The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

182.    The Plaintiff Debtors plead this Count XI in the alternative to Counts I, II, VII, VIII, XI and XIV to the extent necessary to avoid a double recovery on any of the transfers identified on Exhibits A or B.

183.    During the AMA Preference Period, AMA made, or caused to be made, the INNOVATIVE Preferential Transfer, GENEVA Preferential Transfer, OHANA Preferential Transfer, WAVERLY Preferential Transfer, BROOKSIDE Preferential Transfer, LONE PEAK Preferential Transfer (collectively, the "AMA Indirect Transfers").  The AMA Indirect Transfers to the Defendant were comprised of AMA in property.  The AMA Indirect Transfers are listed on Exhibit A.

184.    During the AMA Preference Period, AMA was obligated to pay the debts of INNOVATIVE, GENEVA, OHANA, WAVERLY, BROOKSIDE and LONE PEAK.

185.    Defendant    was    INNOVATIVE'S,    GENEVA'S,    OHANA'S,    WAVERLY'S, BROOKSIDE'S and LONE PEAK'S creditor.

186.    AMA made, or caused to be made, the AMA Indirect Transfers on account of, antecedent debt owed by INNOVATIVE, GENEVA, OHANA, WAVERLY, BROOKSIDE and LONE PEAK to Defendant.

187.    The AMA Indirect Transfers total an amount equal to SIXTY-NINE THOUSAND SEVEND HUNDRED NINETY-SEVEN DOLLARS and Seventeen Cents ($69,797.17).

188.    At the time of the AMA Indirect Transfers, AMA was insolvent.

189.    AMA is entitled to the presumption of insolvency pursuant to Section 547(f) of the Bankruptcy Code.

190.    The AMA Indirect Transfers enabled Defendant to receive more than Defendant would receive if: (a) AMA's bankruptcy case was administered under chapter 7 of the Bankruptcy

Code; (b) the AMA Indirect Transfers had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

191.    At no time relevant hereto did Defendant maintain a lien on AMA's assets or otherwise hold a secured interest.

192.    The AMA Indirect Transfers diminished the value of AMA's bankruptcy estate.

193.    Defendant was the initial transferee of the AMA Indirect Transfers, or the entity for whose benefit the AMA Indirect Transfers were made.

194.    The AMA Indirect Transfers are avoidable and AMA is entitled to an order and judgment against the Defendant avoiding the AMA Indirect Transfers pursuant to 11 U.S.C. §547(b).

**WHEREFORE,** AMA respectfully requests this Court enter a judgment against the Defendant: (i) finding that the AMA Indirect Transfers are preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the AMA Indirect Transfers; (iii); and granting any other and further relief as the Court determines is just and appropriate under the circumstances.

### <u>COUNT XII</u>
**(Avoidance of Preferential Transfers from AMA to Defendant Pursuant to 11 U.S.C. §547(b))**

195.    The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

196.    The Plaintiff Debtors plead this Count XII in the alternative to Counts XI and XIV to the extent necessary to avoid a double recovery on any of the transfers identified on Exhibits A or B.

197.    During the AMA Preference Period, AMA made, or caused to be made, the AMA Preferential Transfers.  The AMA Preferential Transfers were comprised of AMA property and are listed on Exhibit A.

4819-0330-4594.1

198.    Upon information and belief, Defendant was a creditor of AMA.

199.    The AMA Preferential Transfers total an amount equal to NINETEEN THOUSAND NINE HUNDRED NINETY-SEVEN DOLLARS and Five Cents ($19,997.05).

200.    At the time of the AMA Preferential Transfers, AMA was insolvent.

201.    AMA is entitled to the presumption of insolvency pursuant to Section 547(f) of the Bankruptcy Code.

202.    The AMA Preferential Transfers enabled Defendant to receive more than Defendant would receive if: (a) AMA's bankruptcy case was administered under chapter 7 of the Bankruptcy Code; (b) the AMA Preferential Transfers had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

203.    At no time relevant hereto did Defendant maintain a lien on AMA's assets or otherwise hold a secured interest.

204.    The AMA Preferential Transfers diminished the value of AMA's bankruptcy estate.

205.    Defendant was the initial transferee of the AMA Preferential Transfers, or the entity for whose benefit the AMA Preferential Transfers were made.

206.    The AMA Preferential Transfers are avoidable and AMA is entitled to an order and judgment against the Defendant avoiding the AMA Preferential Transfers pursuant to 11 U.S.C. §547(b).

**WHEREFORE,** AMA respectfully requests this Court enter a judgment against the Defendant: (i) finding that the AMA Preferential Transfers are preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the AMA Preferential Transfers; (iii); and granting any other and further relief as the Court determines is just and appropriate under the circumstances.

<u>**COUNT XIII**</u>

**(Avoidance of Preferential Transfers from SKYLINE to Defendant Pursuant to 11 U.S.C. §547(b))**

207.　　The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

208.　　The Plaintiff Debtors plead this Count XIII in the alternative to Counts III and XV to the extent necessary to avoid a double recovery on any of the transfers identified on Exhibits A or B.

209.　　During the SKYLINE Preference Period, SKYLINE made, or caused to be made, the RICHARDSON Preferential Transfer (the "SKYLINE Indirect Transfer").  The SKYLINE Indirect Transfer to the Defendant was comprised of SKYLINE property.  The SKYLINE Indirect Transfer is listed on Exhibit A.

210.　　During the SKYLINE Preference Period, SKYLINE was obligated to pay the debts of RICHARDSON.

211.　　Defendant was RICHARDSON'S creditor.

212.　　SKYLINE made, or caused to be made, the SKYLINE Indirect Transfer on account of, antecedent debt owed by RICHARDSON to Defendant.

213.　　The SKYLINE Indirect Transfer totals an amount equal to SEVENTEEN THOUSAND NINE HUNDRED SIXTY-FOUR DOLLARS and Eighty-nine Cents ($17,964.89).

214.　　At the time of the SKYLINE Indirect Transfer, SKYLINE was insolvent.

215.　　SKYLINE is entitled to the presumption of insolvency pursuant to Section 547(f) of the Bankruptcy Code.

216.　　The SKYLINE Indirect Transfer enabled Defendant to receive more than Defendant would receive if: (a) SKYLINE's bankruptcy case was administered under chapter 7 of

4819-0330-4594.1

the Bankruptcy Code; (b) the SKYLINE Indirect Transfer had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

217.     At no time relevant hereto did Defendant maintain a lien on SKYLINE's assets or otherwise hold a secured interest.

218.     The SKYLINE Indirect Transfer diminished the value of SKYLINE's bankruptcy estate.

219.     Defendant was the initial transferee of the SKYLINE Indirect Transfer, or the entity for whose benefit the SKYLINE Indirect Transfer was made.

220.     The SKYLINE Indirect Transfer are avoidable and SKYLINE is entitled to an order and judgment against the Defendant avoiding the SKYLINE Indirect Transfer pursuant to 11 U.S.C. §547(b).

**WHEREFORE,** SKYLINE respectfully requests this Court enter a judgment against the Defendant: (i) finding that the SKYLINE Indirect Transfer is preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the SKYLINE Indirect Transfer; (iii); and granting any other and further relief as the Court determines is just and appropriate under the circumstances.

### COUNT XIV
**(Avoidance of Fraudulent Transfers from AMA to Defendant Pursuant to 11 U.S.C. §548(a)(1)(B))**

221.     The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

222.     The Plaintiff Debtors plead this Count XIV in the alternative to Count XI and XII to the extent necessary to avoid a double recovery on any of the transfers identified on Exhibits A or B.

223.    Each of the AMA Wrong Payor Transfers set forth on Exhibit B, which collectively total ONE HUNDRED THIRTY-TWO THOUSAND SEVEN HUNDRED NINETY-NINE DOLLARS and Seventy-four Cents ($132,799.74) constitute a transfer of an interest of AMA in property to, or for the benefit of, the Defendant.

224.    At no time during the Insolvency Period did Defendant provide goods or services to AMA in exchange for the AMA Wrong Payor Transfers.

225.    At no time during the Insolvency Period did Defendant provide AMA with reasonably equivalent value in exchange for any of the AMA Wrong Payor Transfers.

226.    AMA was insolvent at the time the AMA Wrong Payor Transfers were made, or, became insolvent as a result of the AMA Wrong Payor Transfers.

227.    At the time the AMA Wrong Payor Transfers were made, AMA was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining constituted unreasonably small capital.

228.    Defendant was the initial transferee of the AMA Wrong Payor Transfers.

229.    The AMA Wrong Payor Transfers are avoidable and AMA is entitled to an order and judgment against the Defendant avoiding the AMA Wrong Payor Transfers pursuant to 11 U.S.C. §548(A)(i)(B)(i) and (ii).

**WHEREFORE,** AMA respectfully requests this Court enter a judgment against the Defendant: (i) finding that the AMA Wrong Payor Transfers are constructively fraudulent transfers and therefore avoidable pursuant to 11 U.S.C. §548(a)(1)(B); (ii) avoiding the AMA Wrong Payor Transfers; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

4819-0330-4594.1

## COUNT XV
**(Avoidance of Fraudulent Transfers from SKYLINE to Defendant Pursuant to 11 U.S.C. §548(a)(1)(B))**

230.    The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

231.    The Plaintiff Debtors plead this Count XV in the alternative to Counts III and XIII to the extent necessary to avoid a double recovery on any of the transfers identified on Exhibits A or B.

232.    The SKYLINE Wrong Payor Transfer, made on or about March 14, 2017, and set forth on Exhibit B, totaling SEVENTEEN THOUSAND NINE HUNDRED SIXTY-FOUR DOLLARS and Eighty-nine Cents ($17,964.89) constitutes a transfer of an interest of SKYLINE in property to, or for the benefit of, the Defendant.

233.    At no time during the Insolvency Period did Defendant provide goods or services to SKYLINE in exchange for the SKYLINE Wrong Payor Transfer.

234.    At no time during the Insolvency Period did Defendant provide SKYLINE with reasonably equivalent value in exchange for any of the SKYLINE Wrong Payor Transfer.

235.    SKYLINE was insolvent at the time the SKYLINE Wrong Payor Transfer was made, or, became insolvent as a result of the SKYLINE Wrong Payor Transfers.

236.    At the time the SKYLINE Wrong Payor Transfer was made, SKYLINE was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining constituted unreasonably small capital.

237.    Defendant was the initial transferee of the SKYLINE Wrong Payor Transfer.

4819-0330-4594.1

238.    The SKYLINE Wrong Payor Transfer are avoidable and SKYLINE is entitled to an order and judgment against the Defendant avoiding the SKYLINE Wrong Payor Transfer pursuant to 11 U.S.C. §548(A)(i)(B)(i) and (ii).

**WHEREFORE,** SKYLINE respectfully requests this Court enter a judgment against the Defendant: (i) finding that the SKYLINE Wrong Payor Transfer is constructively fraudulent transfers and therefore avoidable pursuant to 11 U.S.C. §548(a)(1)(B); (ii) avoiding the SKYLINE Wrong Payor Transfer; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

## COUNT XVI
### (Avoidance of Preferential Transfers from SKYLINE to Defendant Pursuant to 11 U.S.C. §547(b))

239.    The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

240.    During the SKYLINE Preference Period, SKYLINE made, or caused to be made, the SKYLINE Preferential Transfer in the amount of THIRTEEN THOUSAND FOUR HUNDRED FIFTY DOLLARS and Forty-five Cents ($13,450.45).  The SKYLINE Preferential Transfer to the Defendant was comprised of SKYLINE property.  The SKYLINE Preferential Transfer is listed on Exhibit A.

241.    Upon information and belief, Defendant was SKYLINE's creditor.

242.    At the time of the SKYLINE Preferential Transfer, SKYLINE was insolvent.

243.    SKYLINE is entitled to the presumption of insolvency pursuant to Section 547(f) of the Bankruptcy Code.

244.    The SKYLINE Preferential Transfer enabled Defendant to receive more than Defendant would receive if: (a) SKYLINE's bankruptcy case was administered under chapter 7 of

the Bankruptcy Code; (b) the SKYLINE Preferential Transfer had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

245.     At no time relevant hereto did Defendant maintain a lien on SKYLINE's assets or otherwise hold a secured interest.

246.     The SKYLINE Preferential Transfer diminished the value of SKYLINE's bankruptcy estate.

247.     Defendant was the initial transferee of the SKYLINE Preferential Transfer, or the entity for whose benefit the SKYLINE Preferential Transfer was made.

248.     The SKYLINE Preferential Transfer are avoidable and SKYLINE is entitled to an order and judgment against the Defendant avoiding the SKYLINE Preferential Transfer pursuant to 11 U.S.C. §547(b).

**WHEREFORE,** SKYLINE respectfully requests this Court enter a judgment against the Defendant: (i) finding that the SKYLINE Preferential Transfer is preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the SKYLINE Preferential Transfer; (iii); and granting any other and further relief as the Court determines is just and appropriate under the circumstances.

### <u>COUNT XVII</u>
**(Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550(a))**

249.     The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

250.     The Plaintiff Debtors are entitled to avoid the AMA Indirect Transfers, AMA Preferential Transfers, SKYLINE Indirect Transfer and SKYLINE Preferential Transfer (collectively, the "Preferential Transfers") pursuant to Section 547 of the Bankruptcy Code. The

Preferential Transfers total ONE HUNDRED SIXTY-FIVE THOUSAND NINE HUNDRED NINE DOLLARS and Seventy-seven Cents ($165,909.77).

251.    The Plaintiff Debtors are entitled to avoid the AMA Wrong Payor Transfers and SKYLINE Wrong Payor Transfer (collectively, the "Wrong Payor Transfers") pursuant to Section 548 of the Bankruptcy Code. The Wrong Payor Transfers total ONE HUNDRED FIFTY THOUSAND SEVEN HUNDRED SIXTY-FOUR DOLLARS and Sixty-three Cents ($150,764.63).

252.    Defendant was the initial transferee of the Preferential Transfers and the Wrong Payor Transfers, the immediate or mediate transferee of such initial transferee, or the person for whose benefit such transfers were made.

253.    Pursuant to Section 550(a) of the Bankruptcy Code, the Plaintiff Debtors are entitled to recover from Defendant an amount to be determined at trial that is no less than the total amount of TWO HUNDRED FORTY-SEVEN THOUSAND ONE HUNDRED TWO DOLLARS and Thirty-eight Cents ($247,102.38), plus interest thereon to the date of payment.

**WHEREFORE,** the Plaintiff Debtors respectfully request this Court enter a judgment against the Defendant: (i) allowing the Plaintiff Debtors to recover from Defendant TWO HUNDRED FORTY-SEVEN THOUSAND ONE HUNDRED TWO DOLLARS and Thirty-eight Cents ($247,102.38) (the "Transfers"), to be allocated, as appropriate, for the benefit of their respective bankruptcy estates; (ii) awarding pre-judgment and post-judgment interest on the Transfers at the maximum legal rate; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

4819-0330-4594.1

## COUNT XVIII
### (Disallowance of Defendant's Claims Pursuant to 11 U.S.C. §502(d))

254.    The Plaintiff Debtors repeat and reallege all allegations contained in paragraph 1 through 42 above as if fully set forth herein.

255.    Defendant has filed a proof of claim or was identified as a claimant holding an undisputed, liquidated, and not contingent claim on one or more of the Plaintiff Debtors schedules, or has otherwise requested payment from any of the Plaintiff Debtors' estates (collectively, the "Claims")

256.    Defendant is an entity from which property is recoverable under Section 550 of the Bankruptcy Code.

257.    Defendant was the initial transferee of the Transfers, the immediate or mediate transferee of such initial transferee, or the person for whose benefit the Transfers were made.

258.    Defendant has not paid the Plaintiff Debtors the amount of the Transfers, or turned over such property to the Plaintiff Debtors, for which Defendant is liable under Section 550 of the Bankruptcy Code.

259.    Pursuant to Section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee, against the applicable Plaintiff Debtors' estate, must be disallowed until such time as Defendant pays to the Plaintiff Debtors all amounts sought herein.

**WHEREFORE,** the Plaintiff Debtors respectfully request this Court enter a judgment against the Defendant disallowing any Claims pursuant to Section 502 (d) of the Bankruptcy Code, and granting any other and further relief as the Court determines is just and appropriate under the circumstances.

4819-0330-4594.1

## **RESERVATION OF RIGHTS**

260.    The Plaintiff Debtors reserve the right to bring all other claims or causes of action that the Plaintiff Debtors may have against Defendant, on any and all grounds, as allowed under the Bankruptcy Code, or applicable law, or in equity.

261.    This Complaint is not intended to be, nor should it be construed as, a waiver of the Plaintiff Debtors rights to object to the Claims for any reason.

262.    The Plaintiff Debtors reserve the right to amend this Complaint as new information becomes known to the Plaintiff Debtors at any time during the adversary proceeding, through formal discovery or otherwise, to include such information and/or assertions with respect to the Transfers to the Defendant; revise Defendant's name; add additional defendants and/or additional causes of action including, but not limited to, those pursuant to 11 U.S.C. §§ 542, 544, 547, 548 and 550, (collectively, the "Amendments"), and that any and all such Amendments relate back to the date of this Complaint.

**WHEREFORE**, the Plaintiff Debtors respectfully request that the Court enter judgment against Defendant:

(a) Avoiding and recovering the Preferential Transfers pursuant to 11 U.S.C. §§ 547 and 550;

(b) Avoiding and recovering the Wrong Payor Transfers pursuant to 11 U.S.C. §§ 548 and 550;

(c) Granting judgment in favor of the Plaintiff Debtors and directing Defendant to pay the Plaintiff Debtors respective bankruptcy estates an amount to be determined at trial that is no less than the amount of the Transfers, plus interest, pursuant to 11 U.S.C. § 550;

(d) Disallowing the Claims pursuant to 11 U.S.C. § 502(d);

(e) Awarding pre-judgment and post-judgment interest at the maximum legal rate; and

(f) Granting any other and further relief that is appropriate under the circumstances.

4819-0330-4594.1

Dated this 5th day of April, 2019.

/s/ Elizabeth A. Green
Elizabeth A. Green, Esq.
Fed ID No. 903144
Email: egreen@bakerlaw.com
Jimmy D. Parrish, Esq.
Fed. ID No. 2687598
Email: jparrish@bakerlaw.com
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
*Counsel to the Debtors*

4819-0330-4594.1